**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| William James Clark,<br><br>Petitioner,<br><br>v.<br><br>Charles E. Samuels, Jr., *et al.*,<br><br>Respondents. | No. CV-14-02593-TUC-BGM<br><br>**ORDER** |

Currently pending before the Court is Petitioner William James Clark's *pro se* Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody ("Petition") (Doc. 1). Respondents have filed a Return and Answer ("Answer") (Doc. 19). Petitioner did not file a Reply. The Petition is ripe for adjudication.

As an initial matter, "the proper respondent to a habeas petition is 'the person who has custody over [the petitioner].'" *Rumsfeld v. Padilla*, 542 U.S. 426, 434, 124 S.Ct. 2711, 2717, 159 L.Ed.2d 513 (2004) (quoting 28 U.S.C. § 2242) (alterations in original). As such, the Warden of the United States Penitentiary–Tucson ("USP–Tucson"), where Petitioner was housed at the time his Petition (Doc. 1) was filed, is the proper Respondent, but Charles E. Samuels, Jr., Director of the Bureau of Prisons is not. *See id.* The Court takes judicial notice, however, that Louis Winn is no longer warden of USP–Tucson. As such, the Court will substitute the new Warden of USP–Tucson, J. T. Shartle, as the sole Respondent pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

## I. PROCEDURAL BACKGROUND

At the time Petitioner filed his Petition (Doc. 1), Petitioner was an inmate incarcerated at USP–Tucson in Tucson, Arizona. *See* Petition (Doc. 1). Petitioner is currently incarcerated at the Federal Correctional Institution ("FCI") Victorville Medium I in Victorville, California. *See* Fed. Bureau of Prisons ("BOP") Inmate Locater, https://www.bop.gov/inmateloc/ (last visited February 2, 2018). Petitioner is serving a 106-month sentence for Felon in Possession of a Firearm; Fictitious Obligations; and Impersonating a Federal Officer or Employee. *See* Response (Doc. 19) White Decl. (Exh. "A"), Inmate Data (Attach. "1") at 3. Petitioner commited the underlying offense which gave rise to his incarceration on August 3, 2010. *Id.*, Exh. "A," Attach. "1" at 3. Petitioner's projected release date is September 2, 2018. *See* Fed. BOP Inmate Locater, https://www.bop.gov/inmateloc/ (last visited February 2, 2018). On December 22, 2014, Petitioner filed a Petitioner Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody. *See* Petition (Doc. 1). Petitioner challenges disciplinary convictions that resulted in his loss of good time credits. *See id.* Petitioner alleges that due process violations during the disciplinary process resulted in the disallowance of ninety-five (95) days of good time credits. *See id.* Petitioner requests this Court order Respondent to expunge the disciplinary violations and return the ninety-five (95) days of good time credits. *See id.*

## II. FACTUAL BACKGROUND

This matter arises from three (3) separate Incident Reports. Petitioner seeks relief from the aggregate punishment of those proceedings. Petitioner instituted the current action on December 22, 2014. *See* Petition (Doc. 1).

### A. *Incident Report Number 2462624*

On June 29, 2013 at approximately 1:55 p.m., Senior Officer Specialist ("S.O.S.") J. Holt was monitoring a telephone call placed from telephone station 7514-CLP-K-A

that occurred at approximately 9:43 a.m. on June 28, 2013. Response (Doc. 19), White Decl. (Exh. "A"), Incident Report No. 2462624 (Attach. "2") at 1; Petition (Doc. 1) at 14. The call was placed using Petitioner's Register Number; however, S.O.S. Holt recognized that the voice on the call was not that of Petitioner. Response (Doc. 19), Exh. "A," Attach. "2" at 1; Petition (Doc. 1) at 14. Upon review of the ViconNet camera system, S.O.S. Holt observed inmate Errol Sullivan place the call and proceed to talk on the phone for the duration. Response (Doc. 19), Exh. "A," Attach. "2" at 1; Petition (Doc. 1) at 14. S.O.S. Holt charged Petitioner with the prohibited act of Use of the Telephone for Abuses Other Than Illegal Activity in violation of Code 297. Response (Doc. 19), Exh. "A," Attach. "2" at 1; Petition (Doc. 1) at 14.

The following day, Lieutenant L. Brown delivered the incident report to Petitioner. Response (Doc. 19), Exh. "A," Attach. "2" at 1; Petition (Doc. 1) at 14. Lt. Brown also investigated the incident and advised Petitioner of his rights. Response (Doc. 19), Exh. "A," Attach. "2" at 2. Petitioner indicated that he understood those rights. *Id.* During Lt. Brown's investigation, Petitioner stated that he did not agree with the charges and that his "number was used without [his] knowledge." *Id.* Lt. Brown concluded that Petitioner had been appropriately charged, and forwarded the Incident Report to the Unit Discipline Committee ("UDC") for further disposition. *Id.*

On July 1, 2013, the UDC conducted its hearing. Response (Doc. 19), Exh. "A," Attach. "2" at 1. Petitioner stated that he "was locked in [his] cell and [] did not give [Sullivan] [Petitioner's] pac # or approval to use [his] phone." *Id.* Petitioner also requested that the video be reviewed. *Id.* The UDC referred the matter to the Discipline Hearing Officer ("DHO") for further hearing, and if Petitioner was found guilty, appropriate sanctions. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing. Response (Doc. 19), Exh. "A," Attach. "2" at 3–4. Petitioner indicated that he wished to have a staff representative at his DHO hearing, but did not request any witnesses. *Id.*, Exh. "A," Attach. "2" at 3.

On July 2, 2013, Petitioner had a DHO hearing before DHO W. White. *See*

Response (Doc. 19), Exh. "A," Attach. "2" at 12–14. DHO White noted that on July 1, 2013, Counselor J. Bosbous had advised Petitioner of his rights before the DHO, and he indicated that he understood those rights. *Id.*, Exh. "A," Attach. "2" at 12–13. DHO White further noted that Petitioner requested Case Manager G. Gatlin as his staff representative to assist him at the hearing. *Id.* DHO White indicated that Case Manager Gatlin did appear at the hearing. *Id.* DHO White confirmed that Petitioner had not requested any witnesses. *Id.* Petitioner "denied the charge to the DHO and stated, 'I gave him access to my PAC number for emergency purposes only[;] [h]e used it without my knowledge[;] I have requested a new PAC number.'" *Id.*

DHO White considered the facts presented in the body of the written report; Petitioner's statement; Case Manager Gatlin's confirmation that Petitioner's statement before the DHO was the same statement that he had made to the case manager; the Viconnect video surveillance photographs; and Trufone telephone call logs. Response (Doc. 19), Exh. "A," Attach. "2" at 13. DHO White "considered [Petitioner's] denial statement; however, [Petitioner] [is] the only inmate that should have access to [his] PAC number." *Id.* DHO White reminded Petitioner that it is his responsibility to report to his unit counsel anytime he believes his account is compromised. *Id.* DHO White found the reporting officer's statement more credible in light of his "legal obligation to report truthful and accurate facts[,]" but also accepted Petitioner's statement that he had given inmate Sullivan access to his PAC number for emergency purposes only, and stated that "regardless of the reason, it is never permissible to allow another inmate to utilize your phone account." *Id.* DHO White commented that "the use of a telephone while incarcerated is a privilege, not a right . . . [and] by attempting to abuse the telephone system, [Petitioner] interfere[d] with the institution procedures for monitoring telephone calls[,] . . . [and] encourag[ing] others to engage in similar behaviors." *Id.* Accordingly, DHO White determined that Petitioner "committed the prohibited act of telephone abuse (non-criminal)" in violation of Code 297. Response (Doc. 19), Exh. "A," Attach. "2" at 13. DHO White imposed sanctions of twenty-seven days disallowed good conduct time

("GCT"), and 180 days loss of telephone privileges. *Id.* On July 2, 2013, DHO White signed the DHO report and it was delivered to Petitioner on July 5, 2013. *Id.*, Exh. "A," Attach. "2" at 14.

On July 17, 2013, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report No. 2462624. Petition (Doc. 1) at 15. The record does not reflect a response was issued. On August 23, 2013, Petitioner filed a Central Office Administrative Remedy Appeal to the Director. Petition (Doc. 1) at 16. Again, the record does not reflect a response was issued.

### *B. Incident Report Number 2446852*

On May 20, 2013 at approximately 1:20 a.m., Senior Officer ("SO") J. Higgins was conducting rounds in the K-1 housing unit. Response (Doc. 19), White Decl. (Exh. "A"), Incident Report No. 2446852 (Attach. "3") at 1. SO Higgins "observed that the window of cell 219 had been broken and there were pieces of glass scattered from cell 219 to the front of cell 214." *Id.* Petitioner and his cellmate were noted to have been "secured inside the cell when the window was broken." *Id.* SO Higgins charged Petitioner with the prohibited act of Destroying Government Property in violation of Code 218. Response (Doc. 19), Exh. "A," Attach. "3" at 1.

Later the same day Lieutenant K. Kelly delivered the incident report to Petitioner. *Id.* Lt. Kelly also investigated the incident and advised Petitioner of his rights. *Id.*, Exh. "A," Attach. "3" at 2. During Lt. Kelly's investigation, Petitioner stated that he "was having Sevier [sic] chest pains, [and] pushed the direst [sic] button numerous times nobody answered, [he] started banging on the door and unfortunately the last swing hit the window[,] [but] [he] never meant to hit the window let alone break it; [he] just wanted help for [his] chest pains." *Id.* Lt. Kelly noted that Petitioner displayed a good attitude, and understood his rights. *Id.* Petitioner did not request any witnesses. *Id.* Lt. Kelly forwarded the Incident Report to the UDC for further disposition. *Id.*

On May 22, 2013, the UDC conducted its hearing. Response (Doc. 19), Exh. "A," Attach. "3" at 1. At the hearing, Petitioner stated that he "was having chest pain[,] [and]

[] pushed the duress button and nothing happened[,] so [he] was hitting the door and acidently [sic] broke the window." *Id.* Petitioner further stated that his "celly had nothing to do with it." *Id.* The UDC referred the matter to the DHO for a further hearing, and if Petitioner was found guilty, appropriate sanctions. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing. *Id.*, Exh. "A," Attach. "3" at 3–4. Petitioner declined a staff representative, and did not request any witnesses, for his DHO hearing. *Id.*, Exh. "A," Attach. "3" at 3.

On May 28, 2013, Petitioner had a DHO hearing before DHO W. White. *See* Response (Doc. 19), Exh. "A," Attach. "3" at 6–8. DHO White noted that on May 22, 2013, Counselor J. Bosbous had advised Petitioner of his rights before the DHO. *Id.*, Exh. "A," Attach. "3" at 6. At the DHO hearing, Petitioner indicated that he understood his rights, waived his right to a staff representative at the DHO hearing, and requested no witnesses. *Id.*, Exh. "A," Attach. "3" at 6–7. Petitioner "admitted to the charge before the DHO and stated, 'I was having chest pains[;] I hit the duress button about 5 times and no one came[;] I hit the door and accidentally broke the window with my cane[;] [i]t was about 30 minutes before the officer came up to check on me.'" *Id.*, Exh. "A," Attach. "3" at 6.

DHO White relied on Petitioner's admission of guilt, photographs of the broken window, and the facts presented in the written report in finding Petitioner "committed the prohibited act of destruction of government property, Code 218[.]" Response (Doc. 19), Exh. "A," Attach. "3" at 7. DHO White noted "[r]egardless of the reason, it is never permissible to destroy government property." *Id.* DHO White further noted that "[p]roperty intentionally or unintentionally destroyed by inmates prevents the use of those funds for other purposes[,] . . . [and] [w]hen [Petitioner] destroyed/damaged Government property [he] caused a monetary loss to the U.S. Government." *Id.* Accordingly, DHO White imposed sanctions totaling twenty-seven (27) days disallowance of GCT, ninety (90) days loss of commissary privileges, and monetary restitution of $125.00. On May 30, 2013, DHO White signed the DHO report and

delivered it to Petitioner on June 5, 2013.

On May 28, 2013, Petitioner appealed by letter to the Regional Director. Petition (Doc. 1) at 21–22. On June 3, 2013 this initial appeal was rejected because it was not on the proper form. *Id.* at 20. On June 5, 2013, Petitioner filed a second Regional Administrative Remedy Appeal, this time on the BP-10 form. *Id.* at 23–24. Based on the record before the Court, it appears that Petitioner was never given a response. On July 26, 2013, Petitioner filed a Central Office Administrative Remedy Appeal. *Id.* at 25. Again, the record does not reflect a response to this appeal.

### *C. Incident Report Number 2464836*

On July 6, 2013 at approximately 12:00 p.m., SO T. Speerly "perform[ed] random cell searches[,] [and] [] discovered inside [Petitioner's] . . . secured wall locker a pill bottle containing a [sic] unknown white powder substance." Response (Doc. 19), White Decl. (Exh. "A"), Incident Report No. 2464836 (Attach. "4") at 1. SO Speerly noted that "[t]he pill bottle was hidden in the top lip of the locker." *Id.* SO Speerly further reported that "[u]pon testing the substance with a NIK test kit B, and A the substance tested positive for codeine and amphetamine." *Id.* SO Speerly charged Petitioner with the prohibited act of Possession of Any Narcotics in violation of Code 113. *Id.*

Later the same day, Lieutenant N. Perkins delivered the incident report to Petitioner. *Id.* Lt. Perkins also investigated the incident and advised Petitioner of his rights. Response (Doc. 19), Exh. "A," Attach. "4" at 1–2. Petitioner indicated to Lt. Perkins that he understood his rights and the charges. *Id.*, Exh. "A," Attach. "4" at 2. Petitioner did not request a witness or a staff representative during the investigation, nor did he make any statements. *Id.* Lt. Perkins forwarded the incident report to the UDC for further disposition. *Id.*

On July 10, 2013, the UDC conducted its hearing. *Id.*, Exh. "A," Attach. "4" at 1. Petitioner stated that "[t]hey haven't serve [sic] me the incident report. That is laying [sic]." *Id.* The UDC referred the matter to the DHO for further hearing, and if Petitioner was found guilty, recommended sanctions including disciplinary segregation, and loss of

commissary privileges. *Id.* The UDC also provided Petitioner with a Notice of Discipline Hearing Before the DHO and his rights at that hearing. *Id.*, Exh. "A," Attach. "4" at 3–4. Petitioner indicated that he wished to have a staff representative at his DHO hearing, as well as a witness. *Id.*, Exh. "A," Attach. "4" at 3. Lt. Kelly was designated as Petitioner's staff representative, and Nurse Flagg was the requested witness, who was expected to testify that she provided Petitioner with medication. *Id.*

On July 29, 2013, Petitioner had a DHO hearing before DHO W. White. *See* Response (Doc. 19), Exh. "A," Attach. "4" at 9–12. DHO White noted that on July 6, 2013, Counselor U. Velazquez had advised Petitioner of his rights before the DHO. *Id.*, Exh. "A," Attach. "4" at 9. At the hearing, Petitioner's were again reviewed. *Id.*, Exh. "A," Attach. "4" at 10. Petitioner indicated that he understood those rights, and had no documentary evidence to present. *Id.* Petitioner denied the charge and made the following statement:

> The only thing that was in that bottle was Neurontin. Nurse Flagg gave me three of them on the last day of lockdown and told me not to take all 3 of them at the same time, so I placed the other ones in the pill bottle. They were crushed already. I used all the Neurontin up. It was just the residue that was left in the bottle. Also, I was never served my shot and I've had issues with this officer in the past. I just wrote him up a week and a half ago to the warden.

*Id.*, Exh. "A," Attach. "4" at 9–10. Lt. Kelly appeared as Petitioner's staff representative; however, Nurse Flagg was not called to appear during the hearing, because she was not present during the incident. *Id.*, Exh. "A," Attach. "4" at 9–10. Although Nurse Flagg was not called as a witness, she did provide an e-mail to DHO White which stated:

> Inmate Clark did not have a prescription that would test positive for codeine or amphetamines. During the last lockdown, I was delivering evening medications. When I got to his cell, the pouch with the medication malfunctioned and the medication landed on the floor. He was receiving Gabapentin. I had an extra packet of the exact same medication. I instructed him to wait for a couple of hours because I was not sure how much he had taken. Gabapentin would not test positive on a urine test. It is a medication for diabetic neuropathy or seizures.

Response (Doc. 19), Exh. "A," Attach. "4" at 10. Lt. Kelly stated that Petitioner "did state to me that he wasn't served the shot. I couldn't verify it. He also stated that Neurontin is the highest does [sic] pain killer that is not a narcotic and was wondering if that would test positive for what he was being charged with." *Id.*

DHO White considered the written report, Petitioner's denial, the statement of Petitioner's staff representative, as well as Nurse Flagg's statement, and found that Petitioner committed the prohibited act of Possession of Drugs, code 113. Response (Doc. 19), Exh. "A," Attach. "4" at 10. DHO White found the SO Speerly's account of the incident was more credible, and also found that "[t]he photograph of the substance being tested correlate[d] with the officer's written statement." *Id.*, Exh. "A," Attach. "4" at 10–11. DHO White further found that there was no evidence indicating that SO Speerly conspired to falsely accuse Petitioner. *Id.*, Exh. "A," Attach. "4" at 11. DHO White also determined that SO Speerly was "under a legal obligation to report truthful and accurate facts[,]" whereas being truthful may have run counter to Petitioner's interests. *Id.* Additionally, based on the consistency between Petitioner's statement to the DHO and to Lt. Perkins during the investigative process, DHO White found that Lt. Perkins "deliver[ed] and investigat[ed] this incident report per policy guidelines." *Id.* DHO White imposed sanctions totaling forty-one (41) days disallowance of GCT, thirty (3) days disciplinary segregation, 120 days loss of commissary privileges, one (1) year loss of visiting privileges, one (1) year immediate family only visitation, and thirty (30) days of property impound. Response (Doc. 19), Exh. "A," Attach. "4" at 11. On July 30, 2013, DHO White signed the DHO report and delivered it to Petitioner on the same date. *Id.*

On July 30, 2013, Petitioner filed his Regional Administrative Remedy Appeal regarding Incident Report Number 2464836. Petitioner (Doc. 1) at 32–34. Petitioner's Regional Appeal was received on August 6, 2013, and denied on August 14, 2013, because "all pages of BP-10 form must be legible." *Id.* at 31. On August 30, 2013, Petitioner filed a second, typewritten, Regional Administrative Remedy Appeal. *Id.* at

35–36. Based on the record before the Court, it appears that Petitioner was never given a response. Neither does the record reflect the filing of a Central Office Administrative Remedy Appeal or a response to the same.

**II. ANALYSIS**

*A. Jurisdiction—In General*

"Federal courts are always 'under an independent obligation to examine their own jurisdiction,' . . . and a federal court may not entertain an action over which it has no jurisdiction." *Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000) (quoting *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990)). "Generally, motions to contest the legality of a sentence must be filed under § 2255 in the sentencing court, while petitions that challenge the manner, location, or conditions of a sentence's execution must be brought pursuant to § 2241 in the custodial court." *Id.* at 864. Therefore, before proceeding to any other issue a court must establish whether a habeas petition is filed pursuant to § 2241 or § 2255 to determine whether jurisdiction is proper. *Id.* at 865.

Here, Petitioner does not claim that the sentencing court imposed an illegal sentence; rather he seeks relief with respect to disciplinary proceedings while incarcerated at a federal facility. As such, Petitioner is challenging the manner, location or condition of the execution of his sentence. *See e.g., Rogers v. United States*, 180 F.3d 349 (1st Cir. 1999) (Section 2241 petition is appropriate vehicle to challenge the correctness of a jail-time credit determination, once administrative remedies have been exhausted); *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016) (en banc), ("[c]hallenges to the validity of any confinement or to the particulars affecting its duration are the province of habeas corpus[.]" (quoting *Muhammad v. Close*, 540 U.S. 749, 750, 124 S.Ct. 1303, 158 L.Ed.2d 32 (2004)); *Tucker v. Carlson*, 925 F.2d 330, 332 (9th Cir. 1991) (a prisoner's challenge to the "manner in which his sentence was executed . . . [is] maintainable only in a petition for habeas corpus filed pursuant to 28 U.S.C. §

2241""); *Weinstein v. U.S. Parole Comm'n*, 902 F.2d 1451, 1452 (9th Cir. 1990) ("The district court had jurisdiction pursuant to 28 U.S.C. § 2241 to review a claim by a federal prisoner challenging a decision of the United States Parole Commission; *Bostic v. Carlson*, 884 F.2d 1267, 1269 (9th Cir. 1989) ("Habeas corpus jurisdiction is also available for a prisoner's claims that he has been subjected to greater restrictions of his liberty, such as disciplinary segregation without due process of law"). Such a challenge must be brought pursuant to § 2241 in the custodial court. At the time of filing the Petition, Petitioner was incarcerated at USP – Tucson in Arizona. Accordingly, this Court has jurisdiction over this matter. *Francis v. Rison*, 894 F.2d 353 (9th Cir. 1990).

### B. Exhaustion

#### 1. In General

The Ninth Circuit Court of Appeals has stated:

> [28 U.S.C. § 2241] does not specifically require petitioners to exhaust direct appeals before filing petitions for habeas corpus. [Footnote omitted.] However, we require, as a prudential matter, that habeas petitioners exhaust available judicial and administrative remedies before seeking relief under § 2241.

*Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006). "The requirement that federal prisoners exhaust administrative remedies before filing a habeas corpus petition was judicially created; it is not a statutory requirement." *Brown v. Rison*, 895 F.2d 533, 535 (9th Cir. 1990), *overruled on other grounds by Reno v. Koray*, 515 U.S. 50, 54–55, 115 S.Ct. 2021, 2023–24, 132 L.Ed.2d 46 (1995). "Nevertheless, '[p]rudential limits like jurisdictional limits and limits on venue, are ordinarily not optional.'" *Puga v. Chertoff*, 488 F.3d 812, 815 (9th Cir. 2007) (alterations in original) (quoting *Castro-Cortez v. INS*, 239 F.3d 1037, 1047 (9th Cir. 2001), *abrogated on other grounds by Fernandez-Vargas v. Gonzales*, 548 U.S. 30, 126 S.Ct. 2422, 165 L.Ed.2d 323 (2006)).

"Courts may require prudential exhaustion if '(1) agency expertise makes agency

consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.'" *Id.* (quoting *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 881 (9th Cir. 2003)). "When a petitioner does not exhaust administrative remedies, a district court ordinarily should either dismiss the petition without prejudice or stay the proceedings until the petitioner has exhausted remedies, unless exhaustion is excused." *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011) (citations omitted). Exhaustion may be excused if pursuing an administrative remedy would be futile. *Fraley v. United States Bureau of Prisons*, 1 F.3d 924, 925 (9th Cir. 1993).

If a prisoner is unable to obtain an administrative remedy because of his failure to appeal in a timely manner, then the petitioner has procedurally defaulted his habeas corpus claim. *See Nigro v. Sullivan*, 40 F.3d 990, 997 (9th Cir. 1994) (citing *Francis*, *Francis v. Rison*, 894 F.2d 353, 354 (9th Cir. 1990); *Martinez v. Roberts*, 804 F.2d 570, 571 (9th Cir. 1986)). If a claim is procedurally defaulted, the court may require the petitioner to demonstrate cause for the procedural default and actual prejudice from the alleged constitutional violation. *See Francis*, 894 F.2d at 355 (suggesting that the cause and prejudice test is the appropriate test); *Murray v. Carrier*, 477 U.S. 478, 492, 106 S.Ct. 2639, 2647–48, 91 L.Ed.2d 397 (1986) (cause and prejudice test applied to procedural defaults on appeal); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 906–08 (9th Cir. 1986) (cause and prejudice test applied to *pro se* litigants).

### 2. **BOP Administrative Procedures**

The BOP has established an administrative remedy process permitting an inmate to seek review of an issue relating to "any aspect of his/her own confinement." 28 C.F.R. § 542.10(a). Under that process, an inmate seeking to appeal a DHO decision shall submit the appeal "initially to the Regional Director for the region where the inmate is currently located." 28 C.F.R. § 542.14(d)(2). "An inmate who is not satisfied with the

Regional Director's response may submit an Appeal on the appropriate form (BP-11) to the General Counsel within 30 calendar days of the date the Regional Director signed the response." 28 C.F.R. § 542.15(a). The deadlines contained within this process may be extended upon request by the inmate and a showing of a valid reason for delay. 28 C.F.R. § 542.15(a); 28 C.F.R. § 542.14(b). An appeal is considered filed on the date it is logged in the Administrative Remedy Index as received. 28 C.F.R. § 542.18. Once an appeal is filed, a Regional Director shall respond within 30 days; General Counsel shall respond within 40 calendar days. *Id.* "If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level." *Id.*

### 3. Exhaustion in the Instant Case

Here, Respondent did not comment regarding Petitioner's exhaustion of his administrative remedies. Petitioner began the administrative appeal process after each incident report, although the record consistently reflects a lack of response from either the Regional Director or General Counsel. As such, the Court finds it appropriate to consider "the absence of a response to be a denial at that level[.]" 28 C.F.R. § 542.18; *see also Martin v. Fed. Bureau of Prisons*, 2011 WL 6057608, *2 (C.D. Cal. 2011) ("If General Counsel fails to respond within 40 days, the inmate can assume that the appeal was denied and proceed with a lawsuit"). Additionally, the Ninth Circuit Court of Appeals has recognized that:

> the requirement of exhaustion of remedies [is to] aid judicial review by allowing the appropriate development of a factual record in an expert forum; conserve the court's time because of the possibility that the relief applied for may be granted at the administrative level; and allow the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings.

*Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). In this case, the factual record is adequately developed, and nothing in the record suggests that further administrative review would result in any changes. Accordingly, the Court finds the Petitioner's claims

exhausted; however, even if the exhaustion is faulty, it shall be excused and the Court will reach the merits.

### C. Due Process

Petitioner asserts due process violations arising from each of the three incident reports. *See* Petition (Doc. 1). These alleged violations include 1) the DHO's "refus[al] to use the statement of the other inmate as it would have proven me innocent" regarding the telephone abuse charge; 2) Petitioner's finding of guilt regarding breaking his cell window was unjust, because it was an accident; 3) the DHO's failure to have the prescription bottle lab tested and refusal to review the video, as well as her credibility findings in favor of the staff member; and 4) the DHO failing to act as an impartial decision-maker. Petition (Doc. 1) at 5–8.

#### 1. Legal Standard

"Due process in a prison disciplinary hearing is satisfied if the inmate receives written notice of the charges, and a statement of the evidence relied on by the prison officials and the reasons for disciplinary action." *Zimmerlee v. Keeny*, 831 F.2d 183, 186 (9th Cir. 1987) (citing *Wolff v. McDonnell*, 418 U.S. 539, 563–66, 94 S.Ct. 2963, 2978–79, 41 L.Ed.2d 935 (1974)). Additionally, "[t]he inmate has a limited right to call witnesses and to present documentary evidence when permitting him to do so would not unduly threaten institutional safety and goals." *Id.* (citations omitted). "Where an illiterate inmate is involved . . . [or] the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case, he should be free to seek the aid of a fellow inmate, or if that is forbidden to have adequate substitute aid in the form of help from the staff or from a sufficiently competent inmate designated by the staff." *Wolff*, 418 U.S. at 570, 94 S.Ct. at 2981. Finally, inmates have a right to an impartial decision maker. *Id.* at 571, 94 S.Ct. at 2982. "Prison disciplinary proceedings[, however,] are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings do[] not apply." *Wolff*, 418 U.S. at 556, 94 S.Ct. at 2975.

Once the minimal procedural requirements of *Wolff* are met, the district court must ask "whether there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corrections Inst. v. Hill*, 472 U.S. 445, 455–56, 105 S.Ct. 2768, 2774, 86 L.Ed.2d 356 (1985). "[T]he requirements of due process are satisfied if some evidence supports the decision by the prison disciplinary board to revoke good time credits." *Id.* "Ascertaining whether this standard is satisfied does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence." *Id.* Indeed, "[t]he standard is 'minimally stringent' only requiring 'any evidence in the record that could support the conclusion reached by the disciplinary board.'" *Cato v. Rushen*, 824 F.2d 703, 705 (9th Cir. 1987) (citing *Hill*, 472 U.S. at 454–56, 105 S.Ct. at 2774) (emphasis added in *Cato*).

### 2. Petitioner's Disciplinary Proceedings

#### a. Ground One: Right to call witnesses

Petitioner stated that he "was given an incident report for telephone abuse due to another inmate stealing [his] information and using the phone with this information, and without [] permission[,] [and] the other inmate confessed to taking this information without my knowledge[.]" Petition (Doc. 1) at 5. Petitioner asserts that his due process rights were violated, because the "DHO refused to use the statement of the other inmate as it would have proven [Petitioner] innocent[.]" *Id.* The Notice of Discipline Hearing Before the DHO indicates that Petitioner declined to call any witnesses. Response (Doc. 19), White Decl. (Exh. "A"), Incident Report No. 2462624 (Attach. "2") at 3. The DHO Hearing Officer Report similar reflects that Petitioner did not request any witnesses. *Id.*, Exh. "A," Attach. "2" at 12–13. At the DHO hearing, Petitioner stated, "I gave him access to my PAC number for emergency purposes only[,] [h]e used it without my knowledge." *Id.*, Exh. "A," Attach. "2" at 13. Based upon Petitioner's own statement, the DHO noted, "Regardless of the reason, it is never permissible to allow another inmate to utilize you phone account." *Id.*

As such, the record reflects that Petitioner did not request the other inmate to be

called as a witness. *See* Response (Doc. 19), Exh. "A," Attach. "2." Moreover, even if the other inmate had been allowed to testify, it does not change Petitioner's own admission. As the DHO noted, allowing inmates "to abuse the telephone system is a serious violation which jeopardizes the secure and orderly running of the institution." *Id.*, Exh. "A," Attach. "2" at 13. Accordingly, Petitioner's due process rights were not violated as a result of the other inmate not being called as a witness during the DHO hearing for Incident Report Number 2462624.

### b. Ground Two: Finding of guilt after an accident

Petitioner asserts that his due process rights were violated when the DHO found him guilty of destruction of government property. Petition (Doc. 1) at 6. Petitioner argues that he broke the window accidentally when he had a medical emergency and there was no response to his pressing of the medical duress button. *Id.* The record before the Court indicates that Petitioner received written notice of the charges; had the opportunity to call witnesses and present documentary evidence; had a staff representative; and received a statement of the evidence relied on by the prison officials, and the reasons for disciplinary actions. *See* Response (Doc. 19), White Decl. (Exh. "A"), Incident Report No. 2446852 (Attach. "3"). DHO White relied on Petitioner's admission of guilt, photographs of the broken window, and the facts presented in the written report in finding Petitioner "committed the prohibited act of destruction of government property, Code 218[.]" Response (Doc. 19), Exh. "A," Attach. "3" at 7. DHO White noted that "[p]roperty intentionally or unintentionally destroyed by inmates prevents the use of those funds for other purposes[,] . . . [and] [w]hen [Petitioner] destroyed/damaged Government property [he] caused a monetary loss to the U.S. Government." *Id.* The requirements of due process are satisfied if "there is some evidence from which the conclusion of the administrative tribunal could be deduced[.]" *Hill*, 472 U.S. at 455, 105 S.Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S.Ct. 302, 303, 71 L.Ed. 560 (1927)). Petitioner admitted that he broke the glass, albeit by accident. Petition (Doc. 1)

at 6; Response (Doc. 19), Exh. "A," Attach. "3" at 2, 6. The DHO relied on Petitioner's statement, as well as photographs of the broken window, and the statement contained in SO Higgins's written report in finding Petitioner guilty. *Id.*, Exh. "A," Attach. "3" at 7. As such, there is "some evidence" to support the DHO's finding, and Petitioner received the requisite due process.

### c. Ground Three: Finding of guilt regarding narcotics

Petitioner asserts that his due process rights were violated when the DHO found him guilty of possession of narcotics. Petition (Doc. 1) at 7. Petitioner argues that the DHO stated that there were no laboratory results, and refused a video review in violation of his rights. *Id.* Petitioner further asserts that the reporting officer was retaliating against him, and that he had "seen this staff member give another inmate drugs that morning that he stated my empty pill bottle tested possitive [sic] on a nik test, to which tthe [sic] two different medications will give off a false positive." *Id.* The record before the Court indicates that Petitioner received written notice of the charges;[1] had the opportunity to call witnesses and present documentary evidence; had a staff representative; and received a statement of the evidence relied on by the prison officials, and the reasons for disciplinary actions. *See* Response (Doc. 19), White Decl. (Exh. "A"), Incident Report No. 2464836 (Attach. "4"). Petitioner requested Nurse Flagg as a witness; however, DHO White did not call her to appear during the hearing, because she was not present during the incident. *Id.*, Exh. "A," Attach. "4" at 9. The DHO did communicate with Nurse Flagg via e-mail regarding Petitioner's claims. *Id.*, Exh. "A," Attach. "4" at 7–8. In that correspondence, Nurse Flagg indicated that Petitioner "did not

---

[1] At the DHO hearing, Petitioner claimed that he had not received a written report of the charges; however, the Court files indicates that Lt. Perkins investigated the incident, and provided Petitioner a copy of the incident report. "[T]he function of notice [of a claimed violation] is to give the charged party a chance to marshal the facts in his defense and to clarify what the charges are, in fact." *Wolff*, 418 U.S. at 564, 94 S.Ct. at 2978. Petitioner does not claim that he did not receive notice of the DHO hearing, or that he was unable to "marshal the facts in his defense." Petitioner's conclusory allegation that he did not receive the Incident Report is insufficient to establish a due process violation. *See Jones v. Gomez*, 66 F.3d 199, 204–05 (9th Cir. 1995) (conclusory allegations unsupported by a statement of specific facts do not warrant federal habeas relief); *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) (same).

- 17 -

have a prescription that would test positive for codeine or amphehetamines [sic]." *Id.*, Exh. "A," Attach. "4" at 7, 10. The requirements of due process are satisfied if "there is some evidence from which the conclusion of the administrative tribunal could be deduced[.]" *Hill*, 472 U.S. at 455, 105 S.Ct. at 2774 (quoting *United States ex rel. Vajtauer v. Commissioner of Immigration*, 273 U.S. 103, 106, 47 S.Ct. 302, 303, 71 L.Ed. 560 (1927)). DHO White considered the staff member's written account of the incident, as well as Petitioner's denial; a photograph of the pill bottle and NIK test positive for codeine and amphetamines; and Nurse Flagg's statement that the medication she provided to Petitioner would not result in such a positive. As such, there is "some evidence" to support the DHO's finding, and Petitioner received the requisite due process.

### d. Impartiality of DHO

Petitioner asserts that "[o]n all three of Incident Reports, the DHO Officer had always stated that she will always believe her fellow officers before she will believe an inmate." Petition (Doc. 1) at 8. Petitioner argues that "[t]he DHO officer is suppose [sic] to be an independant [sic] person and is suppose [sic] to be unbiased towards us inmates and there [sic] job is to review all of the evidence of both parties and if there is any weight that is [sic] inmate is telling the truth then they should rule in favor of the inmate." *Id.* Petitioner further asserts that his due process rights were violated because of an alleged "failure to have an unbiased DHO hearing officer." *Id.*

"[D]ue process is satisfied as long as no member of the disciplinary board has been involved in the investigation or prosecution of the particular case, or has had any other form of personal involvement in the case." *Wolff v. McDonnell*, 418 U.S. 539, 592, 94 S.Ct. 2963, 2992, 41 L.Ed.2d 935 (1974) (Marshall, J. concurring in part and dissenting in part). Here, DHO White did not participate in the original incident or its investigation, her only role was as the hearing officer. *See* Response (Doc. 19), White Decl. (Exh. "A"), Incident Rpt. Nos. 2462624, 2446852, 2464836 (Attach. "2," "3," & "4"). Petitioner has not demonstrated any actual bias or impartiality on the part of the

DHO, and there is no evidence before the Court to suggest that the DHO's decision was arbitrary. Accordingly, Petitioner's claim regarding DHO bias must fail.

### e. Unspecified claims

Petitioner does not allege any other irregularities in his disciplinary proceedings. Beyond the specific claims discussed in Sections II.C.2.a.–d., *supra*, the record indicates that in each instance, Petitioner received written notice of the charges; had the opportunity to call witnesses; present documentary evidence; have a staff representative; and received a statement of the evidence relied on by the prison officials, and the reasons for disciplinary actions. Furthermore, there is sufficient evidence to support the decisions of the DHO. Accordingly, Petitioner received the requisite due process in his proceedings.

## III. CONCLUSION

Based on the foregoing, the Court finds that the due process requirements as delineated by *Wolff* were met in this case. Additionally, the Court finds that the DHO findings were supported by "some evidence" as required by *Hill*. Therefore, the Petitioner's Petition (Doc. 1) shall be denied. Accordingly, IT IS HEREBY ORDERED that:

(1) J. T. Shartle, Warden, is SUBSTITUTED as the sole Respondent, replacing Charles E. Samuels, Jr. and Louis Winn pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and Rule 43(c)(2) of the Federal Rules of Appellate Procedure; and

(2) Petitioner's Petition Under 28 U.S.C. § 2241 for a Writ of Habeas Corpus by a Person in Federal Custody (Doc. 1) is DENIED; and

(3) The Clerk of the Court shall enter judgment and close its file in this matter.

Dated this 13th day of February, 2018.

Honorable Bruce G. Macdonald
United States Magistrate Judge